UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BELLA VISTA LOTE 56, S.A. and
LORENZO FIGUEROA, individually and
on behalf of all others similarly situated,

    Plaintiffs,

v.

BRP US INC., BOMBARDIER
RECREATIONAL PRODUCTS INC.,
and BRP INC.,

    Defendants.
_____/

Case No. 22-cv-21411

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Bella Vista Lote 56, S.A. and Lorenzo Figueroa, individually and on behalf of all others similarly situated, by and through their attorneys, file this Class Action Complaint against Defendants BRP US Inc., Bombardier Recreational Products Inc., and BRP Inc. for damages and equitable relief and allege the following:

### PRELIMINARY STATEMENT

1.  The Sea-Doo personal watercrafts ("Sea-Doos") suffer from defects that cause the intake grate to detach. Defendants are aware of these defects and know consumers do not anticipate intake grates to detach from Sea-Doos under normal use. The Sea-Doos currently present a safety hazard and are unreasonably dangerous to consumers.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), in that this is a civil action in which the matter in controversy exceeds the sum or value of $5,000,000,

exclusive of interest and costs, and is a class action in which the citizenship of at least one plaintiff is diverse from at least one defendant.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district, and there is no other district in which the action may otherwise be brought.

## PARTIES

4. Bella Vista Lote 56, S.A. ("Bella Vista") is a corporation that is incorporated in the Republic of Guatemala and has its principal place of business in Puerto Barrios, Guatemala. Bella Vista purchased a Sea-Doo manufactured by Defendants.

5. Lorenzo Figueroa ("Figueroa") is an individual who resides in Guatemala. Figueroa is a citizen of Guatemala. Figueroa was injured by a Sea-Doo manufactured by Defendants.

6. BRP US Inc. is a corporation that is incorporated in Delaware and has its principal place of business in Sturtevant, WI. BRP US is engaged in the business of manufacturing Sea-Doos and sells its products in various states, including Florida. BRP US is owned in its entirety by Bombardier Recreational Products Inc.

7. Bombardier Recreational Products Inc. is a foreign corporation that is incorporated in Canada and has its principal place of business in Valcourt, Quebec. Bombardier Recreational Products is engaged in the business of manufacturing Sea-Doos and sells its products in various states, including Florida. Bombardier Recreational Products is owned in its entirety by BRP Inc.

8. BRP Inc. is a foreign corporation that is incorporated in Canada and has its principal place of business in Valcourt, Quebec. BRP is engaged in the business of manufacturing Sea-Doos and sells its products in various states, including Florida. Defendants operate as a single entity for

the purpose of designing, manufacturing, marketing, distributing, warranting, servicing, repairing, and selling the Sea-Doos. Collectively, they will be referred to as "BRP."

## FACTS

9. On or about January 16, 2020, Bella Vista purchased a 2019 Sea-Doo RXT-X 300 from Mas Mar, S.A., an authorized Sea-Doo seller in Guatemala City, Guatemala.

10. On September 30, 2021, Jose Moreno ("Moreno"), one of Bella Vista's principals, lent the Sea-Doo to Figueroa.

11. Figueroa, accompanied by his daughter, took the Sea-Doo for a ride on Río Dulce, a river in eastern Guatemala.

12. After riding on the Sea-Doo with his daughter for a while, Figueroa decided to drop her off at Moreno's house.

13. After dropping off his daughter at Moreno's house, Figueroa decided to go back for another ride on the Sea-Doo.

14. Figueroa accelerated the Sea-Doo to a speed of around 95 km/h ($\approx$ 59 mph).

15. At some point shortly after reaching this speed, the Sea-Doo ejected Figueroa from the vessel in what seemed like an explosion.

16. Figueroa lost consciousness and had to be rescued from the river by bystanders.

17. Figueroa suffered a strong impact on his chest, causing him severe pain.

18. The aforesaid incident has caused Figueroa great physical injury, pain and suffering, physical discomfort, emotional distress, and other damages.

19. The Sea-Doo lost two thirds of its hull, rendering it a total loss. *See* **Images**, below.

 

**Image 1**  **Image 2**

20. On information and belief, defects caused the intake grate to detach from the Sea-Doo, which in turn caused the Sea-Doo to eject Figueroa and break apart.

21. On information and belief, these defects are present in all 2019 Sea-Doos GTX, RXT, or Wake PRO equipped with 230 and 300 engines.

22. At no time before the aforesaid incident did BRP disclose to Plaintiffs that the Sea-Doos suffer from defective intake grates. Had BRP properly disclosed these defects, Bella Vista would not have purchased the Sea-Doo. Likewise, Figueroa would not have used the Sea-Doo.

23. On information and belief, the defective intake grate was present in the Sea-Doo when it left the manufacturing facility.

24. BRP's sale of defective Sea-Doos deprives consumers like Bella Vista of their ability to use a vessel for which they paid thousands of dollars.

25. BRP's sale of defective Sea-Doos puts consumers like Figueroa at risk of injury, serious bodily harm, or death.

26. On information and belief, there are hundreds of other consumers affected by these defects in the Sea-Doos. These consumers have been damaged, receiving watercrafts whose value is less than what consumers paid for them and being put at risk of serious bodily harm due to the unsafe, defective intake grates.

27. These defects pose an unreasonable safety risk to consumers. This failure can occur without warning and result in the Sea-Doos breaking apart in the middle of a lake, ocean, or any body of water, stranding the rider, subjecting him to the risk of drowning, hypothermia, exposure, injury from other watercraft, and a myriad of other dangers.

28. On information and belief, BRP has long known that the Sea-Doos contain these defects. BRP has exclusive access to information about defects through dealerships, who provide pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problems.

29. On the other hand, these defects were not known or discoverable by Plaintiffs and other class members prior to purchase or use.

30. On information and belief, BRP has concealed these defects from consumers. Even when Sea-Doo owners specifically ask whether their Sea-Doo suffers from a known problem, BRP's policy is to deny that there is a problem, continue concealing these defects, and assert that the failures must have been caused by something the owner or user did.

31. BRP knew that potential Sea-Doo buyers or users would deem these defects to be material and reasonable consumers who knew of the defect would not have purchased or used a Sea-Doo at all.

32. BRP had a duty to disclose these defects to its consumers because, inter alia, they pose an unreasonable safety hazard and BRP has exclusive knowledge or access to material facts about the Sea-Doos and these defects that were not known or reasonably discoverable by Plaintiffs and other class members.

33. As a result of BRP's practices, Plaintiffs and other class members purchased Sea-Doos they otherwise would not have purchased, paid more for Sea-Doos than they would have

paid, have incurred damages because the defects have diminished the value of the Sea-Doos, or were subjected to an unreasonable risk to their safety.

## CLASS ACTION ALLEGATIONS

34. Pursuant to Fed. R. Civ. P. 23, Plaintiffs, individually and on behalf of all others similarly situated, seek certification of the following Classes:

> **The Owner Class:** All persons who purchased a 2019 Sea-Doo GTX, RXT, or Wake PRO equipped with 230 and 300 engines.
>
> **The User Class:** All persons who were injured while using a 2019 Sea-Doo GTX, RXT, or Wake PRO equipped with 230 and 300 engines.

The definitions of the Classes are subject to amendment as needed.

35. Excluded from the Classes are Defendants and their affiliates, subsidiaries, agents, board members, directors, officers, employees, any members of the judiciary to whom this case is assigned, their court staff, and Plaintiffs' counsel.

### *Numerosity*

36. This class action satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1) as the Classes are so numerous that joinder of all members is impracticable. The Classes will include hundreds or thousands of members.

### *Commonality and Predominance*

37. This class action satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2) and the predominance requirement of Fed. R. Civ. P. 23(b)(3) as there are questions of law or fact common to the Classes and these predominate over questions affecting only individual members. They include, among others, the following:

   (a) Whether the Sea-Doos contain defects;

   (b) Whether the fact the Sea-Doos suffer from defects would be considered material by a reasonable consumer;

(c) Whether Defendants were aware of the defects;

(d) Whether the defects constitute an unreasonable safety risk;

(e) Whether Defendants had a duty to disclose the defective nature of the Sea-Doos to Plaintiffs and other members of the Classes;

(f) Whether Plaintiffs and other members of the Classes are entitled to a declaration as to their rights under the applicable warranties;

(g) Whether Plaintiffs and other members of the Classes are entitled to equitable relief, including a preliminary or permanent injunction; and

(h) Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act, when they sold defective Sea-Doos to consumers.

### *Typicality*

38. This class action satisfies the typicality requirement of Fed. R. Civ. P. 23(a)(3) as the claims of the representative parties are typical of the claims of the Classes. Plaintiffs, like all class members, purchased or used a Sea-Doo that was fitted with defective intake grates.

### *Adequacy*

39. This class action satisfies the adequacy requirement of Fed. R. Civ. P. 23(a)(4) as Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs are aware of their responsibilities as class representatives and have no conflicts with any member of the Classes. Plaintiffs have retained Ayala Law, P.A. to represent them in this matter, who is experienced in complex litigation and has the necessary skills and resources to meet the needs of this case.

### *Superiority*

40. This class action satisfies the superiority requirement of Fed. R. Civ. P. 23(b)(3) as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy for a variety of reasons, including, without limitation, that it would be an inefficient use of judicial resources to require each member of the Classes affected by Defendants' actions to

bring their own claim. Besides, the case deals with common issues of law that may be adjudicated uniformly in one single action without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require.

*Fed. R. Civ. P. 23(b)(2)*

41. The prerequisites for maintaining a class action under Fed. R. Civ. P. 23(b)(2) also exist because by placing the defective Sea-Doos into the stream of commerce, Defendants have acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

42. Specifically, Plaintiffs seek an order declaring that the Sea-Doos are unreasonably dangerous for consumer use. Plaintiffs request an injunction against Defendants preventing them from selling the defective Sea-Doos and ordering Defendants to recall any defective Sea-Doos that have already been sold.

## COUNT I – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
*(By Bella Vista on behalf of the Owner Class)*

43. Plaintiffs reallege paragraphs 1 through 42 above as if fully set forth herein.

44. Defendants are "merchants," as defined in the Florida Uniform Commercial Code ("UCC"). *See* Fla. Stat. § 672.104(1).

45. The Sea-Doos are "goods," as defined in the UCC. *See* Fla. Stat. § 672.105(1).

46. Defendants were in privity with Bella Vista and other members of the Owner Class because Bella Vista and the other members of the Owner Class were the foreseeable and intended beneficiaries of the warranties relating to the Sea-Doos.

47. Defendants impliedly warranted the Sea-Doos were of merchantable quality, fit, safe, and in a proper condition to be used with reasonable safety, efficiency, and comfort. *See* Fla. Stat. § 672.314.

48. Specifically, Defendants warranted the Sea-Doos would pass without objection in the trade; were of fair average quality; were fit for the ordinary purposes for which they were to be used; would run as vessels similar in kind, price, and quality; would be adequately contained, packaged, and labeled; and would conform to all affirmations of fact made regarding the quality and performance of the Sea-Doos.

49. The Sea-Doos, when manufactured and sold by Defendants, were defective and unreasonably dangerous to consumers.

50. The Sea-Doos were not of merchantable quality and unfit, unsafe, and unusable for the ordinary purpose for which they were intended.

51. Defendants breached the implied warranty of merchantability by failing to properly design, manufacture, test, and inspect the Sea-Doos and by delivering vessels that were unfit for ordinary use.

52. As a direct and proximate result of the breach of said warranty, Bella Vista and the other members of the Owner Class were injured and are entitled to damages.

### COUNT II – BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE
*(By Bella Vista on behalf of the Owner Class)*

53. Plaintiffs reallege paragraphs 1 through 42 above as if fully set forth herein.

54. Defendants are "merchants," as defined in the Florida Uniform Commercial Code ("UCC"). *See* Fla. Stat. § 672.104(1).

55. The Sea-Doos are "goods," as defined in the UCC. *See* Fla. Stat. § 672.105(1).

56. Defendants were in privity with Bella Vista and other members of the Owner Class because Bella Vista and the other members of the Owner Class were the foreseeable and intended beneficiaries of the warranties relating to the Sea-Doos.

57. At the time Bella Vista and other members of the Owner Class purchased their Sea-Doos, Defendants knew or should have known the Sea-Doos were being purchased for a particular purpose, including, but not limited to, use as a water-going vessel and that it would be necessary to operate the Sea-Doos without them breaking apart.

58. At the time Bella Vista and other members of the Owner Class purchased their Sea-Doos, Defendants knew or should have known Bella Vista and other members of the Owner Class were relying on Defendants' skill and judgment to select, furnish and provide Sea-Doos that were fit to be used for a particular purpose, including, but not limited to, use as a water-going vessel and that it would be necessary to operate the Sea-Doos without them breaking apart.

59. Defendants impliedly warranted the Sea-Doos were reasonably fit for the intended use of Bella Vista and the other members of the Owner Class. *See* Fla. Stat. § 672.315.

60. Bella Vista and the other members of the Owner Class relied on the representations, skill, and judgment of Defendants to furnish a product fit for its intended use.

61. At the time Bella Vista and other members of the Owner Class purchased their Sea-Doos, defects existed in the Sea-Doos that were not discoverable by simple observation at the time of delivery. As a result of the defects, the Sea-Doos were not fit for their intended purpose.

62. Defendants breached the implied warranty of fitness for a particular purpose by selecting, furnishing, and providing Sea-Doos that were not fit for their intended purpose and were otherwise unfit.

63. As a direct and proximate result of the breach of said warranty, Bella Vista and the other members of the Owner Class were injured and are entitled to damages.

# COUNT III – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (Fla. Stat. § 501.201 et seq.)
*(By Bella Vista on behalf of the Owner Class)*

64. Plaintiffs reallege paragraphs 1 through 42 above as if fully set forth herein.

65. This is an action for actual damages and injunctive or declaratory relief pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

66. The purpose of the Act is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

67. Bella Vista and other members of the Owner Class are "consumers," as defined by FDUTPA. *See* Fla. Stat. § 501.203(7).

68. Defendants are engaged in "trade or commerce," as defined by FDUTPA. *See* Fla. Stat. § 501.203(8).

69. FDUTPA imposes a duty on Defendants to refrain from engaging in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* Fla. Stat. § 501.204(1).

70. The defects in the Sea-Doos are material and affect a consumer's purchase decisions regarding the Sea-Doos. The defects cause the Sea-Doos to fail entirely. These failures can occur without warning and result in the Sea-Doos sinking in the middle of a lake, ocean, or any large body of water, thereby stranding the riders, and exposing them to a risk of drowning, hypothermia, exposure, injury from other watercraft, and a myriad of other dangers. Nonetheless, Defendants completely failed to warn or advise their customers, including Bella Vista and other members of the Owner Class of the defects.

71. Since the defects were hidden and Defendants failed to disclose them, Bella Vista and other members of the Owner Class had no reasonable way to avoid their injuries.

72. Defendants have engaged in a routine—albeit wrongful—course of conduct, in that they manufactured, sold, distributed, and advertised and continue to manufacture, sell, distribute, and advertise Sea-Doos that are unsafe and unfit for their intended purposes, when they knew or should have known that such was the case.

73. By engaging in the conduct described above, Defendants have caused consumers, including Bella Vista and other members of the Owner Class, to be injured and suffer ascertainable losses and damages, in that, among other things, Defendants course of conduct systematically:

   a. Caused Bella Vista and other members of the Owner Class to pay premium prices for a defective product; pay a greater price for a product than they would have; or pay for a product they would not have purchased had they been warned or advised about the defects; and,

   b. Reduced the value of the Sea-Doos purchased by Bella Vista and other members of the Owner Class.

74. Defendants have engaged in representations, practices, acts, or omissions that are material, and that are likely to mislead consumers acting reasonably under the circumstances. Thus, Defendants have engaged in deceptive acts or practices in violation of FDUTPA.

75. Defendants have committed acts or practices in the conduct of trade or commerce that offend established public policy and are unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendants have committed acts or practices that have caused, or are likely to cause, consumer injury, which is substantial, not outweighed by any countervailing benefits to consumers or competition the practice produces, and an injury that consumers themselves could not reasonably have avoided. Therefore, Defendants have engaged in unfair acts or practices in violation of FDUTPA.

76. As a result of these unfair and deceptive acts, Defendants have caused Bella Vista and other members of the Owner Class to suffer losses and incur actual damages or are entitled to injunctive or declaratory relief because of Defendants' unfair or deceptive acts or practices in violation of FDUTPA.

77. "In any civil litigation resulting from an act or practice involving a violation of [FDUTPA], the prevailing party . . . may receive his or her reasonable attorney's fees and costs from the non-prevailing party." Fla. Stat. § 501.2105.

### COUNT IV – NEGLIGENCE
*(By Figueroa on behalf of the User Class)*

78. Plaintiffs reallege paragraphs 1 through 42 above as if fully set forth herein.

79. Defendants, through their duly authorized agents, representatives, or employees, were responsible for the design, manufacture, and inspection of the Sea-Doos.

80. Defendants were negligent in carrying their responsibilities and failed to act within their duty of care in the following respects:

(a) designed, manufactured, sold, supplied, or delivered Sea-Doos in an unreasonably defective and unsafe condition to users or consumers, which caused, precipitated, or facilitated the injuries suffered by Figueroa and the members of the User Class;

(b) failed to properly and adequately design and manufacture the intake grate of the Sea-Doos to provide reasonable protection and safety to the operator or passenger of such Sea-Doos;

(c) designed, manufactured, sold, supplied, or delivered the Sea-Doos with defective intake grates that Defendants knew or should have known were unreasonably dangerous and would cause significant and catastrophic injuries to the operator or passenger of such Sea-Doos;

(d) designed, manufactured, sold, supplied, or delivered Sea-Doos without providing an adequate, necessary, and reasonable intake grate to protect the operator or passenger during foreseeable uses of such Sea-Doos;

(e) failed to warn operators and passengers of the Sea-Doos adequately and properly about the foreseeable dangers of catastrophic injury, given the existing defective intake grate of said Sea-Doos; and

(f) failed to adequately and properly test the Sea-Doos to determine the intake grate of such Sea-Doos adequately protected the operator or passenger of Sea-Doos from foreseeable injury and harm.

81. As a direct and proximate result of the aforesaid acts or omissions, Figueroa and the members of the User Class have suffered, and continue to suffer, great physical injury, pain and suffering, physical discomfort, emotional distress, and other damages.

82. As a direct and proximate result of the aforesaid acts or omissions, Figueroa and the members of the User Class have also incurred medical expenses and continue to incur future medical expenses from treatment of their injuries.

## **COUNT V – STRICT LIABILITY**
*(By Figueroa on behalf of the User Class)*

83. Plaintiffs reallege paragraphs 1 through 42 above as if fully set forth herein.

84. Defendants, through their duly authorized agents, representatives, or employees, were responsible for the design, manufacture, and inspection of the Sea-Doos.

85. Defendants were negligent in carrying their responsibilities and failed to act within their duty of care in the following respects:

(a) designed, manufactured, sold, supplied, or delivered Sea-Doos in an unreasonably defective and unsafe condition to users or consumers, which caused, precipitated, or facilitated the injuries suffered by Figueroa and the members of the User Class;

(b) failed to properly and adequately design and manufacture the intake grate of the Sea-Doos to provide reasonable protection and safety to the operator or passenger of such Sea-Doos;

(c) designed, manufactured, sold, supplied, or delivered the Sea-Doos with defective intake grates that Defendants knew or should have known were unreasonably dangerous and would cause significant and catastrophic injuries to the operator or passenger of such Sea-Doos;

(d) designed, manufactured, sold, supplied, or delivered Sea-Doos without providing an adequate, necessary, and reasonable intake grate to protect the operator or passenger during foreseeable uses of such Sea-Doos;

(e) failed to warn operators and passengers of the Sea-Doos adequately and properly about the foreseeable dangers of catastrophic injury, given the existing defective intake grate of said Sea-Doos; and

(f) failed to adequately and properly test the Sea-Doos to determine the intake grate of such Sea-Doos adequately protected the operator or passenger of Sea-Doos from foreseeable injury and harm.

86. The defects in design and manufacture of the Sea-Doos existed at the time they left the hands of Defendants.

87. Defendants knew or reasonably should have known of the dangerous condition of the Sea-Doos at the time they left Defendants' control.

88. Because the Sea-Doos are defective in their design, manufacture, and operation and are unreasonably dangerous, Defendants are strictly liable in tort to Figueroa and the members of the User Class for their damages.

89. As a direct and proximate result of the aforesaid acts or omissions, Figueroa and the members of the User Class have suffered, and continue to suffer, great physical injury, pain and suffering, physical discomfort, emotional distress, and other damages.

90. As a direct and proximate result of the aforesaid acts or omissions, Figueroa and the members of the User Class have also incurred medical expenses and continue to incur future medical expenses from treatment of their injuries.

## COUNT VI – INJUNCTIVE RELIEF
*(On behalf of all Classes)*

91. Plaintiffs reallege paragraphs 1 through 42 above as if fully set forth herein.

92. Plaintiffs and the public at large will suffer irreparable harm if Defendants are not ordered to properly repair all the defective Sea-Doos immediately and to cease and desist from marketing, advertising, and selling the defective Sea-Doos.

93. Defendants are under a continuing duty to inform their consumers of the nature and existence of potential defects in the Sea-Doos they manufacture.

94. Plaintiffs demand that, to prevent future damages due to the defective Sea-Doos, Defendants recall all defective Sea-Doos.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Bella Vista Lote 56, S.A. and Lorenzo Figueroa, individually and on behalf of the above-defined Classes, request the entry of an Order in their favor and against Defendants:

a. certifying this case as a class action;

b. appointing Plaintiffs as class representatives;

c. appointing undersigned counsel as class counsel;

d. enjoining Defendants from further deceptive marketing, advertising, and sales practices with respect to the defective Sea-Doos;

e. ordering Defendants to repair and replace the defective Sea-Doo parts with suitable alternative products;

f. ordering Defendants to recall all defective Sea-Doos;

g. awarding damages in favor of the Classes;

h. awarding court costs, as well as reasonable litigation and class-related costs;

i. awarding pre-judgment and post-judgment interest, as provided by law; and

j. such other and further relief that this Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiffs demand trial by jury of all issues so triable.

Dated: May 5, 2022

                                                          Respectfully submitted,

                                                          By: */s/Eduardo A. Maura*
                                                          Eduardo A. Maura, Esq.
                                                          Florida Bar No. 91303
                                                          **Ayala Law, P.A.**
                                                          2490 Coral Way, Ste 401
                                                          Miami, FL 33145
                                                          P: (305) 570-2208
                                                          F: (305) 503-7206
                                                          eduardo@ayalalawpa.com
                                                          *Counsel for Plaintiffs*